**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BHAKTI CURTIS,<br><br>                 Plaintiff,<br><br>                 v.<br><br>NEW JERSEY STATE POLICE, et al.,<br><br>                 Defendants. | Civil Action No. 19-21164 (MAS) (LHG)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon two motions: (1) Defendants New Jersey State Police ("NJSP"), Colonels Patrick J. Callahan and Joseph R. Fuentes ("Colonels"), and Trooper A.R. Lark's ("Trooper Lark") (collectively, "Defendants") Motion to Dismiss Plaintiff Bhakti Curtis's ("Curtis") Complaint (ECF No. 6); and (2) Curtis's unopposed Cross-Motion to Amend the Complaint (ECF No. 11). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Defendants' Motion to Dismiss is denied in part and granted in part, and Curtis's Cross-Motion to Amend is denied in part and granted in part.

## I. BACKGROUND[1]

### A. Background and Procedural History

This action concerns allegations of ongoing racial discrimination and harassment being perpetrated by the NJSP against Curtis, an African American resident of Pennsylvania who regularly travels to New Jersey. The Complaint alleges that since 2015, NJSP troopers have engaged in multiple acts of misconduct including "repeatedly follow[ing], stopp[ing], and harass[ing]" Curtis because of his race. (Compl. ¶¶ 21, 32, ECF No. 1.) The Complaint refers to a December 6, 2017 incident where Trooper Lark pulled Curtis over and improperly issued him a summons for speeding even though Curtis was "lawfully operating his motor vehicle." (*Id.* ¶¶ 10–14.) On December 6, 2019, Curtis filed the present action against Defendants asserting claims under 42 U.S.C. § 1983 ("Section 1983"), the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. §§ 10:6-1, *et seq.*, and for malicious prosecution. (*Id.* ¶¶ 105–29.)

On May 11, 2020, Defendants filed the instant Motion to Dismiss. (ECF No. 6.) Defendants argue that: (1) any claims predating the December 2017 incident are time-bared; (2) the Eleventh Amendment bars claims against the NJSP and the individual Defendants in their official capacities; and (3) the Colonels cannot be held liable under Section 1983 based on a theory of respondeat superior. (Defs' Moving Br. 5–10, ECF No. 6-1.) On July 6, 2020, Curtis filed Opposition and the instant Cross-Motion to Amend accompanied by a Proposed Amended Complaint that sets forth the following allegations.[2] (ECF Nos. 10–11.)

---

[1] For purposes of the instant Motions, the Court summarizes and accepts as true the factual allegations of the Complaint and Proposed Amended Complaint. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[2] Curtis asserts that he "filed many [c]omplaints with the [NJSP] from 2015 to present." (Proposed Amended Complaint ("PAC") ¶ 42, ECF No. 10-2.) According to Curtis, despite "good faith attempts, he has been unable to access these [c]omplaints, and therefore [his] ability to set forth a

### B.     Curtis's Allegations

Curtis "is involved in the automobile show scene and . . . travels around the country" to showcase his vehicles. (PAC ¶ 51.) During the relevant period, Curtis drove four "recognizable" vehicles,[3] each "equipped with legal K-40 laser diffuser systems" and "a personalized license plate showing his name, 'BHAKTI.'" (*Id.* ¶¶ 50–54.)

Sometime in 2015, a NJSP trooper followed Curtis "for miles and then pulled [him] over for what he was told to be a 'taillight' being out in his brand new car." (*Id.* ¶ 68.) After advising Curtis that "he would be arrested if" he stepped out, the NJSP trooper "invited" Curtis "to get out of the car so he could press [the] brakes to show [Curtis] the light was out." (*Id.* ¶ 69.) Curtis claims the NJSP trooper did so in order to arrest him because of his race. (*Id.* ¶ 71.) As a result of this incident, Curtis filed a complaint with the NJSP. (*Id.* ¶ 72.) Curtis participated in an interview in which NJSP troopers allegedly acted "aggressive and disrespectful toward him based upon [his] race and the fact [he] had filed a racial discrimination complaint against their fellow trooper." (*Id.* ¶ 75.) Curtis later received a letter from the NJSP informing him that "the 'case' would be closed." (*Id.* ¶ 73.) Curtis "ultimately filed a second complaint in the form of a 'citizen's complaint' against" the troopers who conducted the interview. (*Id.* ¶ 76.)

On "several occasions" thereafter, NJSP troopers "followed" and "tailed" Curtis, who "often pulled over out of caution to take photographs of the [NJSP] vehicles." (*Id.* ¶ 80.) Curtis asserts the NJSP troopers would "speed off" to avoid being photographed and at times "would

---

proper factual record is significantly hampered." (*Id.* ¶ 46.) Curtis states that "[u]pon receipt and review of those [c]omplaints, and based upon the content contained therein, [he] fully intends to revise and supplement the facts of this [c]omplaint in good faith." (*Id.* ¶ 48.)

[3] Curtis indicates he has driven "1) a yellow Chevrolet Camaro; 2) a white Chevrolet SS Camaro with a red body kit; 3) a white convertible Chevrolet SS Camaro with rim lights; and 4) a charcoal grey 2018 Chevrolet Camaro ZL1." (PAC ¶ 52.)

3

drive off only to" return and interrogate him. (*Id.* ¶¶ 81–82.) Curtis reported the alleged misconduct to the Hunterdon County Prosecutor to no avail. (*Id.* ¶ 83.) The Hunterdon County Prosecutor indicated that it lacks control over the NJSP and provided Curtis "with no guidance or direction as to how to stop" the alleged misconduct. (*Id.* ¶¶ 83–84.) "Around this time," Curtis moved to Pennsylvania. (*Id.* ¶ 85.) Nevertheless, Curtis "continued to travel to and through New Jersey to visit family and friends, as well as for various other reasons." (*Id.* ¶ 86.)

"On another occasion in the 2015/2016 timeframe," a NJSP trooper pulled Curtis over and issued him a summons for purportedly speeding. (*Id.* ¶¶ 87–88.) Curtis then filed another complaint with the NJSP but "was not asked for an interview this time, and subsequently received another letter . . . advising once again that the 'case' would be closed." (*Id.* ¶ 91.) "On another occasion, on or about November 24, 2015," a NJSP trooper followed Curtis "for several miles." (*Id.* ¶ 92.) Curtis "took a photograph of the police vehicle and called the Branchburg Police Department" to report the alleged harassment. (*Id.* ¶ 92.) "On another occasion," a NJSP trooper followed Curtis, who pulled over to take a photograph but the trooper "drove off." (*Id.* ¶¶ 93–95.)

At some point around that time, Curtis observed a NJSP trooper parked near his Pennsylvania residence. (*Id.* ¶ 96.) Curtis then drove to New Jersey. (*Id.* ¶ 97.) According to Curtis, the NJSP trooper "closely followed in a retaliatory and intimidating fashion." (*Id.*) Curtis pulled over at a gas station to take photographs at which point the NJSP trooper "pulled up adjacent to [Curtis] and interrogated him." (*Id.* ¶¶ 99–100.) Curtis "immediately filed a complaint regarding this incident." (*Id.* ¶ 101.) "Eventually, two [NJSP] detectives . . . appeared at [Curtis's] mother's house . . . in New Jersey and interrogated her about whether or not [Curtis] lived there." (*Id.* ¶ 102.) Curtis contacted the detectives, who indicated "they just had questions for [him]" and "would not tell [Curtis] why they were at his mother's house." (*Id.* ¶¶ 103–05.)

4

In or about June 2017, Curtis attended a car rally at the Borgata in Atlantic City. (*Id.* ¶ 110.) Curtis asserts that an intoxicated white male, who later identified himself to be a NJSP trooper, grabbed him by the wrist as he exited a Borgata restroom because the individual suspected that Curtis stole his wallet. (*Id.* ¶¶ 112–15.) Curtis claims that Borgata security detained him because of his race and took him to an office. (*Id.* ¶¶ 117–18.) Curtis further claims that "Borgata security also allowed several of the [t]rooper's drunk friends from the casino bar (who were also white and identified themselves as [NJSP t]roopers)" in the office "where they positioned themselves within a few feet of [him], taunting [him] and making offensive comments." (*Id.* ¶ 120.)

During the incident, a NJSP trooper "advised [Curtis] that he was not being detained, but" stopped Curtis when he tried to leave. (*Id.* ¶ 124.) Curtis alleges the trooper also "pressured" him "to confess to being with 'the black guy with dreads.'" (*Id.* ¶ 129.) Another NJSP trooper "searched" Curtis, "threatened [him] not to speak or he would not be allowed to leave," and "made racially discriminatory remarks." (*Id.* ¶¶ 126–27, 130.) A third NJSP trooper suggested that the Borgata security should falsely write in their report that Curtis was intoxicated. (*Id.* ¶ 132.) Curtis "retained a video of parts of the incident." (*Id.* ¶ 125.)

On December 6, 2017, Trooper Lark pulled Curtis over and "illegally and improperly" issued him a summons for speeding even though Curtis was "lawfully operating his motor vehicle." (*Id.* ¶¶ 21–22.) Since then, NJSP troopers have stopped Curtis on four separate occasions "in short succession for allegedly 'speeding,'" and issued him three citations and one warning, the latter occurring on December 9, 2018. (*Id.* ¶ 135.)

### C.    Additional Parties and Claims

The Proposed Amended Complaint names the following additional parties: the Office of the Attorney General ("OAG"); Attorneys General Gurbir S. Grewal, Christopher S. Porrino,

5

Robert Lougy, and John Hoffman ("Attorneys General"); Bureau Chiefs Christopher P. Nunziato, Scott M. Ebner, and William Harkness ("Bureau Chiefs") of the Intake and Adjudication Bureau of the NJSP Office of Professional Standards; and John Does 1-80. (*Id.* ¶¶ 5-7, 10-14.) Curtis asserts there is "an office-wide ongoing pattern of repeated racial profiling and discrimination." (*Id.* ¶ 38.) Specifically, Curtis asserts that Defendants fail to "abide by statutory requirements," "conduct proper internal investigations," and "implement and abide by the recommendations made by" the Office of Law Enforcement Professional Standards ("OLEPS"). (*Id.* ¶¶ 39-41.)

The Proposed Amended Complaint contains four counts. Count One alleges violations of Section 1983. (*Id.* ¶¶ 207-55.) Count Two alleges violations of the NJCRA. (*Id.* ¶¶ 257-64.) Count Three presents a new claim for alleged violations of a "1999 Consent Decree (codified by [N.J. Stat. Ann. §§] 52:17B-222, *et seq.*)." (*Id.* ¶¶ 265-68.) Count Four appears to assert a separate state law claim for malicious prosecution. (*Id.* ¶¶ 269-73.) Curtis seeks both monetary damages and injunctive relief against all Defendants. (*Id.* at 43, 45-47.)

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

Rule 8(a)(2)[4] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v.*

---

[4] All references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

6

*Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

### B. Motion to Amend

Rule 15(a)(2) states that after a responsive pleading has been served "a party may amend its pleading only with the opposing party's written consent or the court's leave[,]" and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citations omitted). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Id.* (citation omitted). "In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* (citation omitted). "Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

7

### III. DISCUSSION

#### A. Statute of Limitations

Defendants argue that any claims accruing prior to December 6, 2017 are time-barred because they involve "discrete disparate events." (Defs.' Moving Br. 6.) In opposition, Curtis contends that his allegations "plausibly invoke[] the continuing violation[] doctrine and/or the discovery rule . . . by showing a pattern of discrimination" that began in 2015. (Pls.' Opp'n Br. 11–15, ECF No. 10.)

The Third Circuit "permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (internal quotation marks and citation omitted). "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Id.* (citation omitted).

"In determining the length of the statute of limitations for a claim arising under [Section] 1983, courts must apply the limitations period applicable to personal-injury torts in the State in which the cause of action arose." *Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 859 (3d Cir. 2014) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)). A two-year statute of limitations applies to personal injury claims in New Jersey. *Id.* (citing N.J. Stat. Ann. § 2A:14-2).

"Federal law, on the other hand, governs the issue of what constitutes accrual." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (citing *Wallace*, 549 U.S. at 388). "Accrual is the occurrence of damages caused by a wrongful act—when a plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* (internal quotation marks and citation omitted). A claim accrues, and the statute of limitations begins to run, "when

8

the plaintiff knows or has reason to know of the injury which is the basis of the [S]ection 1983 action." *Genty v. Resolution Tr. Corp.*, 937 F.2d 899, 919 (3d Cir. 1991).

"The Equal Protection Clause prohibits selective enforcement of the law based on race." *Rose v. City of Allentown*, 211 F. App'x 133, 139 (3d Cir. 2007) (citations omitted). A selective-enforcement claim based on racial profiling "will accrue at the time that the wrongful act resulting in damages occurs." *Love v. City of New Brunswick*, No. 16-2586, 2018 WL 429247, at *7 (D.N.J. Jan. 16, 2018) (quoting *Dique*, 603 F.3d at 188). "To establish a selective-enforcement claim, a plaintiff must demonstrate (1) that he was treated differently from other similarly situated individuals, and (2) that this selective treatment was based on an unjustifiable standard, such as race . . . ." *Dique*, 603 F.3d at 184 n.5 (internal quotation marks and citation omitted).

Here, Curtis filed the original Complaint on December 6, 2019. (*See* Compl.) Therefore, any claims accruing prior to December 6, 2017 would generally be time-barred. *See* N.J. Stat. Ann. § 2A:14-2. Curtis alleges, however, that Trooper Lark's December 6, 2017 stop is part of an ongoing campaign of racial harassment that began in 2015. (PAC ¶¶ 19–31.) According to Curtis, Defendants have engaged in multiple acts of racial discrimination and harassment against him because he reported a NJSP trooper for misconduct. (*Id.* ¶¶ 58–60.) As outlined more fully above, between 2015 and 2017, those alleged acts include: NJSP troopers repeatedly following and pulling Curtis over; a NJSP trooper appearing near Curtis's Pennsylvania residence before following Curtis into New Jersey; NJSP detectives searching for Curtis at his mother's New Jersey residence; and NJSP troopers, along with staff security, detaining and taunting Curtis at the Borgata. (*Id.* ¶¶ 79–135.) Curtis maintains that NJSP troopers have "repeatedly indicated to [him that] they are 'aware' of him and that they recognize his vehicle(s) on the road." (*Id.* ¶ 55.) Curtis also asserts that he has filed "many [c]omplaints with the [NJSP]" but despite "good faith attempts,

9

he has been unable to access the[m], and therefore [his] ability to set forth a proper factual record is significantly hampered." (*Id.* ¶¶ 42–46.) Based on these facts, Curtis asserts that application of the continuing violation doctrine and the discovery rule is warranted. (Pls.' Opp'n Br. 15.)

The continuing violation doctrine is an equitable exception to the timely filing requirement that "applies when a defendant's conduct is part of a continuing practice." *Randall v. City of Phila. Law Dep't*, 919 F.3d 196, 198 (3d Cir. 2019) (internal quotation marks and citation omitted). In such cases, "so long as the last act evidencing the continuing practice falls within the limitations period . . . the court will grant relief for the earlier related acts that would otherwise be time barred." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (citation omitted). "To determine whether a practice was continual, [courts] consider (1) whether the violations are part of the same subject matter and (2) whether the violations occurred frequently." *Cibula v. Fox*, 570 F. App'x 129, 135 (3d Cir. 2014). "Under the 'discovery rule,' the statute of limitations does not begin to run until the injured party becomes aware, or should become aware, of the existence of his or her injury, or that the injury is due to the fault of a previously unidentifiable individual or entity." *Tripo v. Robert Wood Johnson Med. Ctr.*, 845 F. Supp. 2d 621, 628 (D.N.J. 2012).

After review, the Court finds that the statute of limitations bar is not apparent on the face of Curtis's Complaint. Defendants do not contest whether the December 2017 incident itself presents a cognizable claim that falls within the limitations period. (*See* Def.'s Moving Br. 6.) Rather, the parties dispute whether the allegations predating the December 2017 incident involve "discrete disparate events" or are part on an ongoing practice of discrimination. The Court's "analysis[, however,] is hampered by a lack of specific information of the [alleged] events, much of which is "largely within the control of [D]efendants." *Wiley v. City of Newark*, No. 16-2530, 2017 WL 4678202, at *1 (D.N.J. Oct. 16, 2017) (permitting "claims to go forward to discovery

10

regarding the identities of the individuals putatively responsible, their relationships and roles in relation to the events, [and] whether any alleged misconduct was negligent or intentional . . . ."). More specific information is necessary to properly evaluate whether the alleged violations are in fact part of the same subject matter and whether they occurred frequently. *See Cibula*, 570 F. App'x at 135. At this juncture, therefore, the Court will reserve judgment on whether the continuing violation doctrine or discovery rule applies. The Court, accordingly, denies Defendants' Motion to the extent it seeks to dismiss any potential claims predating the December 2017 incident as time-barred.

### B. Sovereign Immunity

Defendants argue that Curtis's claims against the NJSP and individual Defendants in their official capacities should be dismissed because they are not "persons" amendable to suit under Section 1983 and the NJCRA. (Defs.' Moving Br. 6–8.) In opposition, Curtis appears to acknowledge that the Eleventh Amendment bars any claims seeking relief beyond prospective injunctive relief against the individual Defendants. (*See* Defs.' Opp'n Br. 19–20 ("[T]he Court can easily construe [Curtis's] original Complaint and [Proposed] Amended Complaint as seeking only prospective injunctive relief as to the official capacity claims.").) Yet, Curtis adds the OAG along with other officials in his Proposed Amended Complaint and seeks both monetary damages and injunctive relief against all Defendants. (*See* PAC at 34–43.)

"The Eleventh Amendment renders unconsenting States immune from suits brought in federal courts by private parties." *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193, 197 (3d Cir. 2008). "'This immunity extends to state agencies and departments' and the officers of state agencies acting in their official capacity." *Estate of O'Leary ex rel. v. Sloan*, No. 12-2625, 2015 WL 5335054, at *6 (D.N.J. Sept. 14, 2015) (quoting *MCI Telecomm. Corp. v. Bell*

*Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001)). "Eleventh Amendment immunity applies to claims made under federal law as well as state law." *Id.* (citation omitted). There are, however, three exceptions to Eleventh Amendment immunity: "(1) congressional abrogation, (2) state waiver, and (3) suits against individual state officers for prospective relief to end an ongoing violation of federal law." *MCI Telecomm.*, 271 F.3d at 503.

"Congress did not abrogate [the] states' sovereign immunity when it enacted [Section] 1983." *Walker v. Beard*, 244 F. App'x 439, 440 (3d Cir. 2007). Section 1983 "creates a cause of action against any person who, acting under color of state law, deprives an individual of rights secured by the Constitution or by federal statute." *Jackson v. N.J. Dep't of Human Servs.*, No. 17-118, 2019 WL 669804, at *4 (D.N.J. Feb. 19, 2019) (citation omitted). States, and state entities and officials that are considered "arms of the state," are not "persons" within the meaning of Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989). "Courts in this district have previously recognized that 'the [NJCRA] is interpreted analogously to [Section] 1983.'" *Coles v. Carlini*, 162 F. Supp. 3d 380, 404 (D.N.J. 2015) (citations omitted).

### 1. The NJSP and OAG

The Eleventh Amendment bars Curtis's Section 1983 and NJCRA claims against the NJSP and OAG. "[F]ollowing the Supreme Court's decision in *Will*, courts within this District have routinely dismissed [Section] 1983 claims against the State Police and the OAG, on the grounds that those entities are not 'persons' subject to suit under [Section] 1983." *Dalton v. New Jersey*, No. 17-4094, 2018 WL 305326, at *5 (D.N.J. Jan. 5, 2018) (collecting cases); *see Didiano v. Balicki*, 488 F. App'x 634, 638 (3d Cir. 2012) (concluding the definition of "person" under the NJCRA "does not include the State or defendants which are the functional equivalent of the State"). The Court, therefore, grants Defendants' Motion to the extent it seeks to dismiss Curtis's

Section 1983 and NJCRA claims against the NJSP. In addition, the Court denies Curtis's Cross-Motion to the extent it seeks to add the OAG as a defendant.

### 2. NJSP Officials

#### i. Official-Capacity Suits

One of the exceptions to Eleventh Amendment immunity, commonly referred to as the *Ex Parte Young* doctrine, involves "suits against individual state officers for prospective relief to end an ongoing violation of federal law." *MCI Telecomm.*, 271 F.3d at 503. "In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (alteration in original) (citation omitted).

Here, Curtis asserts that since 2015, NJSP troopers have "continuously" harassed and discriminated against him because of his race, and that the alleged misconduct "continues to this day." (PAC ¶ 31.) Curtis also asserts that, due to his many complaints, the Colonels are aware of the NJSP troopers' actions yet fail to take any corrective measures. (*Id.* ¶¶ 236–38.) Curtis brings claims under Section 1983 and seeks monetary damages and to enjoin Defendants from further engaging in the alleged misconduct. (*Id.* ¶ 137.) Defendants do not address the original Complaint's allegations of ongoing discrimination and instead focus on dismissing any potential claims predating the December 2017 incident. Construing the allegations liberally, the Court finds that the *Ex Parte Young* doctrine applies to the official-capacity claims to the extent they seek prospective injunctive relief only. *Waterfront Comm'n of N.Y. Harbor v. Governor of N.J.*, 961 F.3d 234, 238 (3d Cir. 2020) (A person who is aggrieved by an "ongoing violation of federal law" may "seek prospective relief by suing [the official] in his official capacity."). Curtis's official-

capacity claims, however, are dismissed to the extent they seek monetary damages. *Stevenson v. Carroll*, 474 F. App'x 845, 848 (3d Cir. 2012) ("[T]he Eleventh Amendment bars a suit for monetary damages against state officials sued in their official capacities."). The Court, accordingly, denies Defendants' Motion to the extent it seeks to dismiss the official-capacity claims requesting prospective injunctive relief.

### ii     Respondeat Superior

Defendants argue that the Colonels cannot be held liable under Section 1983 based on a theory of respondeat superior and that Curtis fails to allege that the Colonels were personally involved in any of the purported wrongdoings. (Defs.' Moving Br. 8–10.)

"A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (alteration in original) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Personal involvement can be established where the defendant (1) "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm," or (2) "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (citation omitted). "Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode*, 845 F.2d at 1207.

As noted, Curtis asserts that he "filed many [c]omplaints with the [NJSP] from 2015 to present." (PAC ¶ 42.) Curtis posits that, by ignoring his complaints, the Colonels "exhibited actual knowledge and acquiescence to, as well as deliberate indifference (via facilitating, condoning,

approving, implementing, and/or otherwise practicing 'willful blindness') to the plight of Mr. Curtis and the repetitive and ongoing deprivation of his rights." (*Id.* ¶¶ 236–38.) As with the equitable exception issue, the Court's analysis is hampered by the lack of specific information. It is unclear, for example, when Curtis filed the complaints with the NJSP and whether the allegations survive the statute of limitations. The Court, therefore, will also reserve judgment on this issue.

### C.    Attorneys General, Bureau Chiefs, and N.J. Stat. Ann. §§ 52:17B-222 *et seq.*

The Proposed Amended Complaint adds current and former Attorneys General and the Bureau Chiefs as defendants and assert claims against them in Count One for alleged violations of Section 1983 for failure to comply with the 1999 Consent Decree, codified at N.J. Stat. Ann. §§ 52:17B-222, *et seq.* (*See* PAC ¶¶ 196–200, 207–28, 241.) The Proposed Amended Complaint also adds Count Three, which appears to assert a state law claim against all Defendants for alleged violations of the same decree and state statute. (*Id.* ¶¶ 265–68.) For efficiency and because the two overlap, the Court addresses both claims in this section.

"In order to resolve the claims in a lawsuit threatened by the U.S. Department of Justice" ("DOJ") concerning issues of racial profiling, "the State of New Jersey entered into a Consent Decree requiring vast changes in State Police operations." *White v. Williams*, 179 F. Supp. 2d 405, 413 (D.N.J. 2002) (citation omitted). "At its core, the Consent Decree require[d] the State to develop and implement a [program] designed to identity and modify potentially problematic behavior and to promote best practices among its troopers." *Id.* at 414 (internal quotation marks and citation omitted). "The decree remained in effect until September 2009" after "report[s of] substantial and uninterrupted compliance." *State v. Herrerra*, 48 A.3d 1009, 1019–20 (N.J. 2012). That same year, the Legislature enacted the Law Enforcement Professional Standards Act ("LEPSA"), 52:17B-222, *et seq.*, which among other things, established the OLEPS "to carry out

investigative, policy and training oversight, and monitoring activities." *Id.* at 1021 (citations omitted). While in effect, the decree could "only be enforced by the DOJ." *White*, 179 F. Supp. 2d at 414 (citation omitted).

Here, Curtis asserts that "[a]ll Defendants repeatedly failed to comply with the statutory requirements of [LEPSA], which codified the 1999 Consent Decree." (PAC ¶ 267.) The Court rejects Curtis's claims because aside from the generalized conclusory allegations of noncompliance, the statute—like the dissolved consent decree—does not appear to create a private cause of action. Curtis does not cite, nor is the Court aware of any, legal authority to the contrary. The Court, therefore, denies Curtis's Cross-Motion to the extent it seeks to add the Attorneys General and the Bureau Chiefs as defendants and to the extent it seeks to add a claim for violations of LEPSA.[5]

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is denied in part and granted in part. Curtis's Motion to Amend is denied in part and granted in part. The Court will enter an Order consistent with this Memorandum Opinion.

*MAShipp*

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

---

[5] To the extent Curtis sought to assert another claim against the Bureau Chiefs, the Court rejects any such claim because Curtis's allegations are conclusory and based on impermissible group pleading. *See Branch v. Christie*, No. 16-2467, 2018 WL 337751, at *3 (D.N.J. Jan. 8, 2018) ("Mere conclusory allegations against [d]efendants as a group which fail to allege the personal involvement of any [d]efendant are insufficient to survive a motion to dismiss." (internal quotation marks and citation omitted)).